Marshall, C. J.,
dissenting. I dissent from the conclusions reached by the majority of this court and the judgments relating to each of the tracts of land under controversy. The two propositions will be discussed in the same order as in the majority opinion, and the 54-acre tract will be dealt with first. As a preliminary to that discussion it must be conceded that the majority opinion is right in holding that the transaction is not affected in any way by the alleged releases executed by Henrietta Thiessen •Johnson and Asa Moore. Those conveyances could have no proper relation to this controversy in any event, because the plaintiffs in the lower courts were not claiming as heirs of Henry Moore. Henry Moore died in 1910, and the rights of Wilbur Moore in the deed to the 54-acre tract then became complete as against Henry Moore and for nine years was not questioned in any way. The plaintiffs below claim *424 under the decedent Wilbur Moore and not from the decedent Henry Moore. The consideration clause in the deed to the 54-acre tract has already been recited and need not now be repeated, but it is sufficient to say that no consideration has ever been claimed of greater value than $1. The finding of the court of appeals was that $1 was .in fact paid, and, inasmuch as the record shows that the other grantees in that deed were infants of tender years, it conclusively follows that the dollar was in fact paid by Ida C. Moore, whose interest in the deed was only that of a life tenant, having no other relation to the interest of Wilbur Moore therein. Payment was not made and could not have been made by Wilbur Moore or any of the other minor children. The deed was executed by a father to his own children, without anything having been paid by those children to the father, and the conveyance was made in recognition of the natural and legal duty and obligation of the father toward the children, which fact is shown by the conveyance having been made a.t a time when there was discord between the parents. Upon these undisputed facts must rest the determination of the character of the conveyance of the 54-acre tract. It is claimed that the payment of $1 by Ida C. Moore constituted such a consideration as will give the title of the minors who gave no part of the express consideration the characteristic of non-ancestral property. Although it is well settled by a long line of authorities that testimony is competent to show a different consideration from that expressed, in order to establish the validity of a conveyance and to give it operative effect, it is contended in the majority opinion that such testimony *425 is not competent in order to establish its character or to change the course of descent.
Several eases decided by this court practically support such a proposition, but nowhere do we find any sound reason given for the rule, and surely no valid reason can be given. Upon what principle can it be said that we should look to the character of a conveyance to determine its validity and operative effect, but that we must look to its form to determine its character? In a proceeding to determine the validity of a deed all authorities agree that the court should inquire what was the real transaction, and that form must yield to substance. Upon what principle can it be urged therefore that in determining the character of the conveyance the substance must yield to the form? A mistaken notion seems to prevail that in any conveyance of real estate, whether gift or sale, it is necessary to express some consideration. While this is undoubtedly true as to any executory contract of sale, no sound or sensible reason is perceived for applying the same rule to an executed transaction.
Will anyone contend that a person having capacity to contract may not make a valid gift to some other person to whom he owes no natural duty and for whom he entertains no affection? Various kinds and characters of consideration are recognized in conveyances of real estate, but all such classifications and distinctions are only important where rights of third parties intervene. As between grantor and grantee, and as between donor and donee, we submit that no consideration need be expressed in the deed of conveyance, or even exist, provided the grantor or donor has capacity to contract and is not *426 laboring under any legal disability. Let us suppose that a conveyance should be made in the following form:
“I, John Doe, hereby convey to Richard Roe, in fee simple, Lot No. 1, in Capital Addition to the City of Columbus in Franklin county, Ohio.
“Dated this 1st day of May, 1922.
“(Signed) John Doe.”
(Executed in the presence of two witnesses and properly acknowledged.)
Let it be assumed that John Doe at the time was financially solvent and of sound mind and intended to make an absolute gift to Richard Doe. Would anyone contend that he could afterwards recover the title because no consideration was expressed in the deed? And would anyone contend that the mere fact of one dollar being expressed in the deed, as a consideration, when in fact the dollar was not paid, would give it validity? Would the deed have additional virtue if it expressed the consideration of natural love and affection, and, if questioned, must the donor’s state of mind be established? The battle of Hastings was fought nearly nine hundred years ago, and feudalism never had a foothold in the United States. While we obtain very many of the principles pertaining to the law of real property and conveyancing from the feudal period, we are certainly far enough removed from that period to throw off the yoke of forms and technicalities when they run counter to the substance and real character of the transaction. It is doubtless by reason of unwarranted conclusions drawn from early cases that a general notion prevails that no deed is sufficient in form unless some consideration is *427 therein expressed, and this has given rise to a custom of expressing a consideration of one dollar in all conveyances where the consideration is not solely natural love and affection. Courts have generally lost sight of the distinctions between a real consideration and a nominal one. It is quite clear in the instant case that the one dollar paid was considered to be only a nominal sum and a technical compliance with what the law was supposed to be. The problem in the instant case is one of construction of contract, and in properly construing the contract under consideration we should look to the true nature of the contract and not resort to antiquated technicalities which have pertained to the subject of conveyancing out of deference to customs long since obsolete and almost forgotten. It is impossible to carefully study this transaction without reaching the conclusion that the payment of one dollar was not the moving cause of Henry Moore making this conveyance, but that the real inducement was his legal and natural duty to make proper provision for the care and maintenance of his minor children. It clearly appears from this record that the sum of one dollar was in fact paid, and that it was paid by Ida C. Moore, who was competent to make payment. Nothing was conveyed to her except a life estate, and that life estate is not brought in question in this case. We are only concerned with the interest of Wilbur Moore therein, who was the recipient of a one-fourth interest by that conveyance. He was at that time an infant of tender years. No one would contend seriously that he made the payment, or any part of it, or that he was competent to make a payment of the one dollar, or *428 any part of one dollar. The deed therefore shows on its face that it could not have been a purchase, because Wilbur Moore and his brothers and sisters, to say nothing of the unborn grantees, could not have entered into a legal contract. The deed is only valid on the theory that it was altogether to the advantage of the infant children and that nothing was required to be done by them and no payment required to be made by them. All parties to this controversy agree that the conveyance was a valid one, and it could only be so upon the theory of it being a gift.
While some of the former decisions of this court contain expressions in the opinions not in perfect harmony with the views herein expressed, it will be found in those cases that the expressed consideration was a large sum of money, and that the grantee in each instance was an adult person capable of contracting, and, therefore, capable of paying the valuable consideration. There was the element of mutuality of contract, which involves necessarily the element of competent parties. In the instant case it is apparent that while on the one hand there was no valuable consideration passed as an inducement for the conveyance, there was clearly existent the consideration of blood, natural duty, love and affection. The question whether any title is ancestral or non-ancestral necessarily turns upon the kind and character of the consideration, that is to say, whether it is a good consideration or a valuable one, whether it is nominal or real. Blackstone (2 Blackstone, 297) has drawn the true distinction between a good and a valuable consideration, and that distinction is just as accurate today as it was when written one *429 hundred and fifty years ago: “A good consideration is such as that of blood, or of natural love and affection, when a man grants an estate to a near relation; being founded on motives of generosity, prudence, and natural duty; a valuable consideration is such as money, marriage, or the like, which the law esteems an equivalent given for the grant; and is therefore founded in motives of justice.”
Referring to the tract of 2.37 acres, known as Parcel No. 2, there are two questions for determination. First, was the decree of the court valid wherein this tract was decreed to Ida C. Moore for life with remainder to the children, including Wilbur Moore? Second, can such a decree be successfully attacked collaterally in the manner attempted in this cause?
It is apparently not denied in the majority opinion that if the alimony decree in that case was a valid one the estate thereby created would be not by descent, devise or deed of gift, and therefore distributable under Section 8574, General Code. The majority opinion, however, contends that that alimony decree was not valid. It is unfortunate that such a conclusion has been reached in the case, because it is directly opposed to the judgment of this court in the case of Heflebower v. Heflebower, 102 Ohio St., 674. From the short per curiam opinion in that case we quote the following:
“The defendant in error in this case not only failed to prosecute appeal or error for more than six years, but reinforced the presumption of validity by concurring in that judgment and making the payments of alimony in accordance therewith.
“To all legal intents and purposes that judgment was a' final and valid judgment against the defend *430 ant, unreversed and unmodified for a period of more than six years. Pie cannot thereafter in a proceeding in contempt for failure to continue obedience to the order raise the question of original jurisdiction to make the order, based upon what the evidence was in the original hearing on divorce and alimony.
“Clearly as a matter of common sense, common law, and common justice, he ought not, after concurring in the order for six years, be thereafter heard to complain by a collateral attack in a contempt proceeding. If he had any remedy whatsoever, it was by motion to modify the former order.”
The statement of facts in that case, appearing in part on page 676, shows that precisely the same jurisdictional question was raised in that case as in the instant case.
At the time of the entry of the decree in the alimony suit it appears that Henry Moore was not a man of means, and that he did not own much, if any other property than the 2-acre tract. At that time the children were respectively aged four, six, eight and ten years. He clearly owed a duty to care for and maintain them. The court found that he had been guilty of extreme cruelty, and that the wife was entitled to a divorce on that ground, and the marriage relation was therefore dissolved. The court awarded the exclusive custody of the children to the wife, Avith the privilege of visitation. It is evident from the decree that it was the purpose of the court, in making disposition of the 2-acre tract, not to grant it to the wife as alimony but to make provision for the care and maintenance of the children. It may be conceded that in making an order for alimony or for support of children the common *431 pleas court does not exercise general equity powers, but only those powers expressly conferred by statute, or necessarily implied therefrom. Since the majority opinion raises the question of the power of the court to enter the decree relative to the 2-acre tract, we must look to Sections 8033, 8034 and 11987, General Code, to determine whether the court did have power and authority to make the order which was in fact made.
Section 8033 provides that the court shall decide which of the parents shall have the care, custody and control of children, under certain limitations and restrictions therein stated. Section 8034 provides that ‘ ‘ The court may order either or both parents to support or help support such children, whoever be their custodian,” etc. Section 11987 is as follows: “The granting of a divorce and dissolution of the marriage in no wise shall affect the legitimacy of children of the parties thereto. The court shall make such order for the disposition, care and maintenance of the children, if any, as is just.”
• The court had jurisdiction over the parties, also over the subject-matter of the proceeding, and also over all the property of the defendant, and if the language of the statutes above referred to and quoted has any potency whatever, and if it be assumed, as we must assume, that the legislature intended that those sections should be given the effect which their language naturally imports, then the conclusion is irresistible that the court did have the power to transfer the title of the 2-acre tract from the father to the children. It was the duty of the court under those statutes to make proper provision for the care and maintenance of the children, and the court *432 hearing the cause could better judge those matters than the courts at the present time, with the meager knowledge of the circumstances of the parties presented by this record. It fairly appears that other than the 2-acre tract Henry Moore, Sr,, had very little if any property which could have been awarded to the children for their care and maintenance. We know of no principle of law which exempts real estate, or makes it of a character different from personal property, so far as concerns the employment of it to make provision for the care and maintenance of children. It would not be questioned that the court could order the defendant to make payment of a certain sum of money to the wife, or any other person, as guardian or trustee for the benefit of the children, if the court had found that the defendant possessed money to which such an order would apply, and no reason is apparent why an order relating to real estate is not equally valid. It would seem from the facts presented and the findings made by the court of appeals that the court which heard the divorce and alimony case made the only order for the care and maintenance of children which it was possible to make under the circumstances.
It is stated in the majority opinion that the order for conveyance of the 2-acre tract to the children had no reference to maintenance and that this fact is shown by a life estate having been reserved. The record does not bear out this contention, because it appears that shortly after this conveyance was made proceedings were instituted in the probate court to sell a portion of the tract for the benefit of the children, and that Henry Moore, Sr., joined therein. It clearly appears, therefore, not only that it was the *433 intention of the court to make provision for maintenance, but that the real estate was in fact so employed. I cannot therefore agree with the majority that the purpose of the order had anything to do with directing the course of succession of the title to the real estate after the death, of the parents. There is nothing in the decree which so indicates, and surely this court is not justified in indulging a far-fetched presumption that the trial court in that ease deliberately intended to do something which would be wholly beyond its jurisdiction. If there was any doubt about the legality or the finality of the order of the court relative to the 2-acre tract, as a provision for the care and maintenance of the minor children, all debate of that question has been foreclosed since the death of Henry Moore. No one other than Henry Moore ever had any right to question it, and since the questions in this case do not arise upon a distribution of the estate of Henry Moore there is no possible privity of interest that would permit any of the parties to this suit.to raise the question. I have no doubt, however, that it was a valid order when made, and that the court had full jurisdiction to make it, and, while the jurisdiction was a continuing one, it continued only during the life of Henry Moore. This attack upon the maintenance order is not a direct attack in an error proceeding, but a collateral attack sought to be made by strangers to the divorce and alimony suit. It is undoubted that a collateral attack can be made in cases where the court has acted without general jurisdiction over the subject-matter, or without having acquired jurisdiction over the parties defendant. Jurisdiction is a term well understood to be the power *434 to hear and determine a cause. If a case is presented which brings the power of the court into action, and the parties have their day in court, the court may make an erroneous order which should be reversed by a superior court in a proper error proceeding; but any order, however erroneous, made by a court having general jurisdiction of the subject-matter, with the parties before it, without any review being sought, becomes proof against collateral attack. I am therefore of the opinion that as to the 54-acre tract the judgment of the court of appeals should be reversed and as to the 2-acre tract its judgment should be affirmed.